UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>46. MARLON RIVERA,<br>a/k/a "King Pluto"<br><br>Defendant | No. 19-CR-10459-RWZ |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RELEASE[1]

The government hereby files this memorandum in support of its motion to detain the Defendant, Marlon Rivera ("M. Rivera" or the "Defendant"). Put plainly, the defendant presents a tremendous danger to the community, victims and witnesses, and a pronounced risk of flight. As the evidence submitted in support of detention demonstrates, no conditions of release can assure the safety of the community or particular witnesses in this case, or prevent him from committing additional crimes, or assure his appearance.[2]

---

[1] The government submitted nineteen exhibits in support of detention. References to exhibits submitted in support of this response are by exhibit number and page or paragraph, where appropriate, e.g., Exhibit _, p. _. The government assumes the Court has access to the defendant's criminal history through the pretrial services report. The government submits this opposition prior to receipt or review of the pretrial services report, which has not been furnished as of the time of filing.

[2] The Defendant does not raise any claims related to COVID-19 and does not present information concerning any medical condition. Cf. D. 744. As such, the government does not address COVID-19 in this opposition.

## BACKGROUND

### I. GROUNDS FOR DETENTION

The Defendant is charged in Count One of the Indictment, alleging Conspiracy to Conduct Enterprise Affairs Through a Pattern of Racketeering Activity, in violation of 18 U.S.C. § 1962(d). See D. 1. The government seeks detention of the Defendant on the following grounds:

- 18 U.S.C. § 3142(f)(1)(D), because the defendant is charged with a felony and has been previously convicted of two prior qualifying state drug offenses;[3]

- 18 U.S.C. § 3142(f)(1)(E), because the defendant is charged with a felony that involve the possession or use of a firearm;

- 18 U.S.C. § 3142(f)(2)(A), because there is a serious the Defendant will not return to Court if released; and

- 18 U.S.C. § 3142(f)(2)(B), because the defendant presents a serious risk of obstruction of justice.

### II. DETENTION EVIDENCE

The government submitted nineteen Exhibits in support of detention. The government summarizes their substance here:

- The Latin Kings criminal enterprise, and the Defendant's leadership role as the former Inca of the Latin Kings in the Fitchburg Chapter. *See* Exhibit 1, & ¶¶ 64-67.

- An October 28, 2018 recording of a Latin Kings Massachusetts State Team meeting, where the Defendant was present with other leaders of local chapters and state leadership. *See* Exhibit (report of the 10/28/18 meeting), 11 (transcript of 10/28/18 meeting), 12 (excerpt of the 10/28/18 recording regarding victim 34), 13 (excerpt of the 10/28/18 recording).

- During the October 28, 2018, recording the Defendant (Inca of Fitchburg at the time) and Will Velez (Cacique of Fitchburg) reported on the status of the Fitchburg Chapter. *See* Exhibit 10, 11, 12. In particular, they were questioned about the status of the Chapter following the termination of an individual referred to as Victim 34 in the Affidavit for cooperating with law enforcement. *See* Exhibit 1, ¶¶ 267-274.

---

[3] The government notes following qualifying convictions: Norfolk Superior Court Docket No. 13093100 charging possession with intent to distribute class A substance; Worcester Superior Court Docket No. 09118, charging distribution of class B substance.

- o  This particular termination is discussed at length in the Detention Affidavit.  *See* Exhibit 1, ¶¶ 267-274.  In particular, codefendants COTTO and I. RODRIGUEZ were tasked with handling it, and conspired extensively to lure Victim 34 to the termination.  However, before they could accomplish this, the Fitchburg Chapter members terminated Victim 34 on their own.

- Following the termination of Victim 34, the Defendant was elevated to Inca, which is reflected both in the Detention Affidavit and in the 10/28/18 recording.  *See* Exhibit 1, 274 ("On 8/31/19, I. RODRIGUEZ contacted COTTO. After a conversation regarding unrelated LATIN KING matters, I. RODRIGUEZ states, "Aight no doubt, and then also umm I don't know if you already got word that ahh…[Victim 34], [Victim 34], Fitchburg was already handled." COTTO responded "Ya, he already handled." I. RODRIGUEZ adds, "Ya, ya, so I guess, I guess Pluto, Pluto's out there got that Inca position now." Investigators know "Pluto" to be M. RIVERA, and know that he took over the Fitchburg chapter Inca position after Victim 34 was "handled," or terminated.").

- During the 10/28/18 meeting, the State leadership (LIBERATO the State Inca and PEGUERO-COLON the Chairman of the State Crown Council) ask the Defendant, as Inca, and Will Velez, as Cacique whether the recent arrests of Fitchburg Chapter members were a result of Victim 34 cooperating with law enforcement.  *See* Exhibit 11 ("one brother's showing proof that [Victim 34] had told on a case, and he was removed from the nation"). The following exchange then takes place:

| | |
|---|---|
| VELEZ: | Yeah the brothers- after we T'd [Victim 34] a lot of us got bagged. A lot of brothers in jail from the chapter. Like- |
| CW: | Just out the cut. |
| M. RIVERA: | Everybody's locked up from our chapter. There's a lot of brothers locked up right now. It's hot out there right now. There's a lot of crazy ass shit going on out there. |
| LIBERATO: | You think that's cause [Victim 34]'s telling? |
| M. RIVERA: | Ahh ssssh… |
| PEGUERO: | It's just coincidental because if they were gonna get- the way I look at it, if they were gonna get bagged they would've got bagged before that. It just so happens that ever since he got T'd that happened. So maybe they were still on him. Maybe they were on that- on those brothers. We don't know. It's just- just crazy. |
| CW: | It doesn't seem like a coincidence though. |
| M. RIVERA: | Its ain't safe lately, I said it's hot, man. It's like real crazy. Scary crazy. Coffins out there on the corner. Like (OV) |
| VELEZ: | (UI) getting picked up. We got like 8 brothers in jail. (UI) |

> M. RIVERA: (UI) we probably got like six- seven brothers left, you know.
>
> LIBERATO: What are they being charged with?
>
> M. RIVERA: Everybody had different allegations. It wasn't because of [Victim 34]. It's just- in general, (OV) a lot of brothers locked up right now.
>
> PEGUERO: We're not saying that [Victim 34] (UI) It's a matter of just- just coincidental. Like they can- let's say for instance they're hustling, and now they got bagged for hustling. But they were getting bagged before.
>
> M. RIVERA: It's just a lot of brothers is locked up (UI). Allegations they already had stuff like that. (UI) Playing it low (UI) it's only like 6-7 of us left. We just been laying low right now.

- Later, during the same 10/28/18 recording, the group discusses the violent termination of members in bad standing, assaults and attacks upon witnesses. *See e.g.*, Exhibit 11, p. 20 (LIBERATO: "I don't know. But listen I put my address on there to come get you some stuff, and he was (UI) talking about something, so I went to his house with an AK and shit, and he was scared shit, dude.").

- Additionally, the group discusses the potential for RICO prosecution of the Latin Kings, and the leaders advise members to avoid dealing drugs with other Latin Kings members. The Defendant implores the members, "Whatever you do, do it on your own. You know, a lot of people do shit within the nation fall sometimes. You got to know what you're doing now. You crash out, cause everybody else to crash out man." *See* Exhibit 11, p. 34; Exhibit 13.

- The Defendant, of course, failed to heed his own advice, and was captured on numerous wiretap interceptions purchasing numerous narcotics from FRANCISCO LOPEZ, another individual present at the 10/28/18 meeting, who was State Secretary at the time. *See* Exhibit 9 (Defendant employing phone number 3632, and referred to as UM3632 prior to confirmation of identity), p. 6 ("I need 14 bro on my way you at the same spot?"), p. 13 ("I need 21"), p. 19 ("I need three ball bro"), p. 24 ("I need a 14"), p. 26 ("Need 14").

- Additionally, the Defendant was captured on a recording in February 2019, discussing his narcotics enterprise with ANGEL CALDERON, and offering to connect him with his source of supply. *See* Exhibit 1, ¶ 162; Exhibit 2 (report), Exhibit 16, Exhibit 17. During the same recording at 11:20, the Defendant notes he has 5 grams on him at that moment, which he received from CALDERON and that he intends to adulterate the drugs. The Defendant reports to CALDERON that he has a "plug" (source of supply) that can get "whatever you want" and confirms that the source can get "weight" and specifies the type of drugs to be "straight dog food" (heroin). *See* Exhibit 16.

- As he states, "the dope is the taste they want, you know what I mean, I mix my shit into dog food" and "I fuck with the fetty" (fentanyl) continuing "10 of fetty I throw 1 gram of dope on." *See* Exhibit 2, p. 4. The Defendant, states "I buy a gram of dope from my man for

4

$55"; "that is shit is 2 for 1 on the dope"; "I only sells 5s and up bro"; "I got a nigga that comes every two days and buys five ten I sell ten grams for 500 tho"; "Every first he buys two or three racks". *See* Exhibit 17.

- Moreover, the Defendant was captured describing his sale of numerous firearms to ANGEL ROLDAN, a/k/a "KING BIG A." As the Defendant stated, "I sold that nigga Big A 3 40s nigga 40s two clip For the hood Yea feed the hood What he doing with all the hammers bro." *See* Exhibit 2, p. 4; Exhibit 14; Exhibit 15, Exhibit 18. The recordings capture CALDERON describing how ROLDAN had taken advantage of his leadership position and taken the guns. CALDERON states, "I would have killed the nigga for that," and the Defendant responds, "no doubt."

- The Defendant was relieved of his leadership role of the Fitchburg Chapter following his March 19, 2019, arrest on attempted home invasion and firearms charges involving multiple Latin Kings, where a Latin Kings member named Gargoyle was killed by the intended victim. *See* Criminal History, Docket No. 1901CR001245; Exhibit 5 (CW providing information as to Defendant's involvement in home invasion), 6 (Boston Police report concerning incident), 7 (statement of the case for indicted codefendants).

- Prior to his arrest, the Defendant in fact was recorded on a consensually recorded line discussing the home invasion incident. *See* Exhibit 8 (line sheet regarding death of Gargoyle). The Defendant downplays his involvement to CW-9 but expresses a considerable amount of knowledge of the incident, consistent with his documented presence in the vehicle at the time. *See* Exhibit 5, Exhibit 6, Exhibit 8.

- The Defendant was not Indicted for this home invasion incident,[4] but was identified on video as being involved, and other Latin Kings members have identified the Defendant's participation and the home invasion to have been committed in furtherance of the enterprise. *See* Exhibit 5, Exhibit 6. The enforcer for the Fitchburg Chapter reported the Defendant's involvement to CW-9 and also identified Will Velez, the Cacique of the Fitchburg Chapter as being involved. *See* Exhibit 5. In fact, Will Velez was Indicted for the attempted home invasion. *See* Exhibit 7.

- The arrest was a violation of the Defendant's conditions of pretrial release for a then pending drug case in Fitchburg District Court. *See* Docket No. 1901CR001706; Exhibit 4. The Defendant's bail was revoked, Exhibit 4, p. 3, and he then pled guilty to a reduced charge of possession of class B.

## LEGAL STANDARD

---

[4] Will Velez, the Cacique of the Fitchburg Chapter, is under Indictment for this incident. *See* Exhibit 7.

A defendant must be detained pending trial if, after a hearing, the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).[5] The government bears the burden of demonstrating that the defendant poses a danger to the community by clear and convincing evidence, or that the defendant poses a flight risk by a preponderance of the evidence. See United States v. Rose, 2012 WL 2500497, *1 (D. Mass. 2012) (Gorton, J.).

In determining whether any conditions of release will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), which include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that the defendant's release would pose to any other person or the community.

I. **THE DEFENDANT IS A DANGER TO THE COMMUNITY AND A RISK OF FLIGHT**

Each and every factor to be considered supports the Defendant's detention, and demonstrates that no conditions of release can assure the safety of the community, prevent obstruction of justice, or assure his appearance.

    A. **NATURE AND CIRCUMSTANCES OF THE CHARGED OFFENSES**

---

[5] As noted by the Senate Judiciary Committee: "This reference to safety of any other person is intended to cover the situation in which the *safety of a particular identifiable individual, perhaps a victim or witness*, is of concern, while the language referring to the safety of the community refers to the danger that *the defendant might engage in criminal activity to the detriment of the community*." S. Rep. No. 98-147, at 39 (1983) (emphasis added; footnotes omitted); *see also United States v. Patriarca,* 948 F.2d 789, 792–793 (1st Cir. 1991).

As the affidavit and evidence submitted makes clear, the Defendant's involvement in the Latin Kings includes a significant leadership role, directing the affairs of a local chapter of the enterprise and its members. The Defendant also took an active role in Fitchburg Chapter, and became leader of the Chapter following the termination of Victim 34, who had provided information to law enforcement. He attended a meeting of the State leadership in October 2018 based upon this role and reported the activity of the Chapter.

The Defendant is also captured describing his distribution of drugs and his source of supply. The Defendant is captured on a wiretap ordering narcotics from other Latin Kings members, describing the extent of his drug enterprise, and the manner of his adulterating the product for greater potency and profit.

The Defendant also described selling numerous firearms to another Latin King members ROLDAN, for purposes of ensuring the enterprise had access to sufficient weapons. *See* Exhibit 2 (describing selling guns to ROLDAN for the hood), Exhibit 14, Exhibit 15, Exhibit 18.

The Defendant also participated in a home invasion involving firearms that resulted in a member being killed. The Defendant was in one of the vehicles used to travel to the robbery, and though he was not charged in state court, because he did not exit the vehicle it is clear that he participated in this racketeering activity by travelling there with other Latin Kings. *See* Exhibit 6. "During the course of this investigation, investigators had developed credible information that the rear passenger of the vehicle operated by Velez, was an associate of Velez, known as Pluto." Exhibit 6. Indeed, members of the Latin Kings reported to a CW that the Defendant was part of the robbery. *See* Exhibit 5.

    **B.**     **WEIGHT OF THE EVIDENCE**

The weight of the evidence also overwhelmingly supports detention. See Exs. 1-19. The numerous recordings alone prove his membership in the enterprise and participation in the conspiracy. The Defendant also was captured at a meeting of state leadership discussing the affairs of the enterprise and its various chapters, and reporting any legal consequences resulting from the recent termination of a cooperating witness.

The Defendant was captured on recording discussing his narcotics enterprise and ordering additional narcotics. Moreover, the Defendant spoke candidly to other members about his source and customers boasting that he does not sell less than 5s. The Defendant also described his access and sale of numerous firearms to another member of the Latin Kings. All of this evidence was recorded and the Defendant's distinctive voice can be heard making the statements. Coupled with the fact that the Defendant pled guilty to the Fitchburg case from December 2018, there is little doubt that the Defendant's words describing his narcotics trafficking were based on fact.

### C. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The Defendant is no stranger to the Court system. He has the following prior convictions:

- Fitchburg District Court, Possession of Class B, Docket No. 1816CR1706, sentenced to nine months.

- Norfolk Superior Court, Possession to Distribute Class A, Docket No. 130931, sentenced to 2 to 3 years and probation. The Defendant violated probation based on Fitchburg arrest, and sentenced to 6 months.

- Worcester Superior Court, Distribution of Counterfeit Drugs, Docket No. 091481, sentenced to one year.

- Worcester Superior Court, Distribution of Class B, Docket No. 090118, sentenced to one year.

- Brockton District Court, Larceny of a Motor Vehicle, Docket No. 0115CR8229, sentenced to one year.

The Fitchburg District Court case involved the Defendant being placed under arrest for operating with a suspended license. During his arrest, 14 grams of crack cocaine were found in his rear waistband/buttocks area. *See* Exhibit 4.

Of note, the Defendant committed all the listed offenses above, while on probation from the Norfolk Superior Court. Additionally, the February 2019 recording took place, while on probation from Norfolk Superior Court and pretrial release from Fitchburg District Court. Based on the new arrests, the Defendant faced a violation of probation on Norfolk Superior Court Docket No. 130931003 based on the Fitchburg case and home invasion arrests. The Defendant pled guilty to a reduced charged on the Fitchburg case, and he was then sentenced to concurrent time in the house of correction, and his probation was revoked.

### D.  NATURE AND SERIOUSNESS OF DANGER POSED BY RELEASE

The Defendant presents a serious danger posed if released. Despite being on pretrial release and probation following a state prison sentence, this Defendant returned to the Latin Kings and assumed a leadership position within the Latin Kings. The government notes that the Defendant obtained this leadership position following the termination of Victim 34 who was targeted by Defendant and the Fitchburg Chapter for providing information to law enforcement. These facts alone bespeak the danger to the community and witnesses that the Defendant presents if released, and prove that conditions of release would do nothing to impede the Defendant.

Furthermore, this Defendant simply refuses to stop dealing drugs, irrespective of conditions of probation, or pretrial release, both of which were in place prior to the Defendant's arrest in March 2019. The Defendant's specific description of his drug distribution practices to fellow Latin Kings members made while on probation and pretrial release demonstrate his

willingness to continue distributing drugs irrespective of court orders.  Moreover, the Defendant described selling multiple firearms to Latin Kings during the same recording. This access and willingness to distribute firearms to other members to facilitate the enterprise's violence further proves that conditions of release are wholly inappropriate.

Lastly, the Defendant participated and planned a deadly home invasion and was identified as being present and in the vehicle by his Cacique Velez.  Though the Defendant was not charged in state court, it is clear from the decedent and Velez's membership in the Latin Kings (proven by role as Cacique and presence at the 10/28/18 meeting), that this home invasion was a Latin Kings racketeering act.  The Defendant's presence and involvement in the home invasion are demonstrated by his own recorded statements and knowledge of the incident and statements by others.  All of this took place while the Defendant was on pretrial release and probation.

In sum, the Defendant received a promotion to Inca following the termination of an individual for providing information to law enforcement.  As such, this Court can be assured that the Defendant and members of this enterprise will not hesitate to target other witnesses and victims.  Detention is the only means to prevent the Defendant from committing further crimes, ensure the safety of witnesses and victims, and assure the Court that the Defendant will return to answer for his crimes.

## **CONCLUSION**

The defendant presents a significant danger to the community, a serious risk of flight, and a serious risk of obstructing justice.  No conditions can assure the safety of the community, prevent the obstruction of justice, or assure the Defendant's return to Court.  As such, the defendant must be detained.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By:   */s/ Philip A. Mallard*
        Philip A. Mallard
        Assistant U.S. Attorney
        United States Attorney's Office
        1 Courthouse Way, Suite 9200
        Boston MA 02210
        617-748-3674

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        */s/ Philip A. Mallard*
        Philip A. Mallard
        Assistant U.S. Attorney

Date: April 23, 2020