UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

46.  MARLON RIVERA,

        Defendant.

No. 1:19-cr-10459-RWZ

**DEFENDANT MARLON RIVERA'S**
**MEMORANDUM IN SUPPORT OF HIS MOTION FOR RELEASE**

The defendant Marlon Rivera, by his undersigned counsel, submits this memorandum to respond to certain contentions made by the government in its Response Memorandum filed on April 23, 2020 ("Memorandum" or "Mem."). There is no "clear and convincing" evidence that Mr. Rivera's release on conditions would imperil the safety of any other person or the community, *United States v. Rose*, 2012 WL 2500497, *1 (D. Mass. 2012) (Gorton, J.). He should be released on conditions pursuant to 18 U.S.C. § 3142(c).[1]

The government in its Memorandum exaggerates the evidence suggesting that Mr. Rivera presents an ongoing risk to the community because of his association with violence and drug distribution. First, the evidence does not establish Mr. Rivera's involvement in the planning or carrying out of any violent conduct. Although the government states that Mr. Rivera and others "targeted" Victim 34, the Fitchburg chapter member referred to in the Detention Affidavit, the Affidavit actually makes clear that Roldan (the former Cacique for Massachusetts), directed two

---

[1] While the Memorandum argues that Mr. Rivera also poses a serious risk of flight, there is no evidence that he is a flight risk and the government did not so argue at the detention hearing.

men from *other* chapters – Rodriguez and Cotto – to carry out the assault. Mem. at 9; Ex. 1 ¶¶ 267-274.  Mr. Rivera was not in any of the conversations leading up to the termination, in which Roldan specified it was to be handled "with other members *not* from Fitchburg." *Id*. ¶ 273. While Mr. Rivera was later mentioned in a conversation as the successor Fitchburg Inca, *id*. ¶ 274, there is no evidence that he knew of any planned attack.  Indeed, in the one reported conversation involving Mr. Rivera where Victim 34 came up, the October 2018 Springfield meeting, another person stated that Victim 34 had been terminated and "removed from the nation" – without reference to any violence.  Ex. 11, p. 1.  It is unclear whether the assault planned by the others ever occurred.

     Mr. Rivera's allegedly having succeeded to the Fitchburg Inca role for seven months in 2018 - 2019 simply does not, as the government claims, "prove that conditions of release would do nothing to impede" him from endangering the community.  Mem. at 9.  In fact, his alleged role as Inca appears to have been relatively passive.  Although the government claims that he "reported the activity" of the chapter at the October 2018 meeting, in fact he merely discussed its *inactivity* – he said that most of its members were locked up, and the remaining six or seven had "just been laying low right now." *Id*. at 4.

     As to the February 4, 2019 attempted home invasion at which Latin King member Morales was killed, Mr. Rivera is reported to have remained in the back seat of one of the two vehicles involved.  There is no evidence of his planning or otherwise being complicit in the home invasion attempt.  *See, e.g., Commonwealth v. Gonzalez*, 56 N.E.3d 1271 (Mass. 2016) (evidence that defendant drove a car that dropped off people who shot the victim was insufficient to support finding that defendant shared the shooters' intent); *Commonwealth v. Miguel*, No. CR 01-0490, 2002 Mass. Super. LEXIS 44 at *6 (Mass. Super. Ct. Mar. 28, 2002) (no probable

cause as to a car passenger where the driver left the car and participated in a drug transaction, although defendant lived with the driver and suspected his drug dealing).[2]

Second, the government also overstates the risk that, if released, Mr. Rivera would engage in drug transactions. As noted at the hearing, Mr. Rivera has been a user of hard drugs, and most of the recorded mentions of drug transactions indicate that he was the buyer, not the seller. The single conversation in which he generically describes how he mixes drugs does not, as the government argues, indicate that he is running a "drug enterprise." Mem. at 4-5, 7. The issue in terms of release is whether there is clear and convincing evidence that he would distribute (or use) illegal drugs if released on appropriate conditions. There is not.

Finally, as the Probation Office reported in its post-hearing memorandum, the home of Mr. Rivera's mother is suitable for his residing while on pretrial release. The house contains a finished basement with a bedroom, bathroom, and refrigerator, which would accommodate a 14-day self-quarantine. Further, two concerns raised by the Court at the hearing can also be addressed: outpatient treatment is available at Boston Medical Center, a 20-minute drive from his mother's house; and Mr. Rivera should be able to receive a Suboxone prescription for the 14-day period of his self-quarantine. Mr. Rivera's mother and his sister, Michelle Vasquez, who lives nearby, are both willing and able to take Mr. Rivera to appointments and to bring him supplies he may require while self-quarantining.

### Conclusion

For all of the reasons stated above, Mr. Rivera should be released pending trial on such conditions as the Court finds appropriate pursuant to 18 U.S.C. § 3142(c).

---

[2] The Memorandum also mentions repeatedly Mr. Rivera's having stated that he had sold guns to Roldan on one occasion. Mem. at 5, 7, 8, 10. Given his lack of any criminal record of dealing in firearms or any violent offense, a single sale does not raise a clear or convincing inference that he would engage in such conduct while on supervised release with appropriate conditions.

Respectfully submitted,

MARLON RIVERA

By his attorney,

/s/ *John J. Falvey, Jr.*
John J. Falvey, Jr. (BBO# 542674)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: 617-570-1000
Fax.: 617-523-1231
jfalvey@goodwinlaw.com

Dated: April 28, 2020

## CERTIFICATE OF SERVICE

I, John J. Falvey, Jr., certify that this document will be sent by electronic mail to counsel for the government on April 28, 2020.

/s/ *John J. Falvey*
John J. Falvey, Jr. (BBO# 542674)