UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                         )<br>)<br>MARLON RIVERA,                      )<br>)<br>                    Defendant          )<br>_____) | Criminal No.  19-10459-RWZ |

**MEMORANDUM AND ORDER ON DETENTION**

**May 19, 2020**

Hennessy, M.J.

Defendant Marlon Rivera, having first assented to detention at his December 18, 2019 arraignment, requested a bail hearing on April 16, 2020.  On April 24, 2020, I held a hearing, and received supplemental filings on April 28.  Rivera is ordered detained.

**I.    BACKGROUND**

According to 19 exhibits filed in support of the Government's motion to detain Rivera, Marlon Rivera is a member of the Latin Kings gang.  Ex. 1, ¶ 64.  He helped establish the Devon Street Kings Chapter, and served as the Inca, or leader, of the Fitchburg Chapter.  Id.  YouTube videos, showing Rivera flashing gang signs and holding firearms and cash, memorialize his membership.  Id.  Intercepted telephone calls prove Rivera's purchase of narcotics from a fellow gang member.  Id., ¶ 65.  In one such instance, officers stopped Rivera in a car and recovered 14 grams of cocaine base.  Id.  Other recordings show that Rivera distributed drugs.  For instance, Rivera is captured on a video recording delivering 1.5 grams of cocaine base to another Latin King.  Id., ¶67.  In addition, during a February 2019 recording of a conversation with another Latin King, Rivera discussed his drug business.  See Exs. 16 and 17.  Rivera reported having a

1

source who could provide whatever drug his associate wanted.  Id.  Rivera also explained how he cut heroin with fentanyl, and "only sells fives and up," and has a regular customer who buys 10 grams for $500.  Id.  During another consensually-recorded conversation, Rivera reported selling firearms and magazines – "three 40s, … two clips" – to an associate.  See Ex. 2, p. 4.

The evidence shows that in February 2019, Rivera participated in an armed home invasion in Boston during which an accomplice, also a Latin King member, was fatally shot by the intended victim.  See Ex. 6  Rivera, remaining throughout the home invasion in the back seat of one of two cars driven to the crime, fled, leaving his mortally wounded accomplice in a parking lot.  Id.  At the time of the offense, Rivera was on pretrial release for Possession to Distribute Class B (Subsequent Offense).  See Pretrial Services Report (PTS Report), p. 8.  The Commonwealth ultimately chose not to prosecute Rivera for the armed home invasion.  Id.

Rivera has been convicted of three drug distribution or possession felonies.  Id., pp. 6-8.  He also has a significant substance abuse history.  Id., p. 3.  He currently participates in Medication Assisted Treatment ("MAT") at the jail where he is detained.  Id., pp 2-3.

## II.     THE GOVERNMENT'S MOTION TO DETAIN

The Government moved for detention on grounds of dangerousness, risk of flight and risk of obstruction of justice.  Rivera agreed to a voluntary order of detention without prejudice. [Dkt. No. 223].  I grant the Government's motion for detention on grounds of dangerousness.  I deny the motion on grounds of risk of flight and risk of obstruction of justice.

### A.     The Bail Reform Act of 1984

A judicial officer may order a defendant detained pending trial if the United States establishes (1) by clear and convincing evidence that a defendant is a danger to the community, or (2) by a preponderance of the evidence that a defendant poses a serious risk of flight or a

serious risk of obstruction of justice. 18 U.S.C. § 3142(f); see United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986), cert. denied, 479 U.S. 978 (1986). The judicial officer may then detain a person pending trial only if the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

In making this determination the judicial officer must consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense ... involves ... a controlled substance [or] firearm;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

**B.  Analysis**

Applying the factors set forth in Section 3142(g), I find by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. I find the Government has failed to carry its burden by a

preponderance of the evidence that no condition or combination of conditions will reasonably assure Rivera's appearance as required or prevent the obstruction of justice.[1]

The first factor, the nature and circumstances of the offense charged, warrants detention. A grand jury has determined that Rivera conspired to participate in a racketeering enterprise, the Latin Kings. As the detention affidavit shows, the Latin Kings relies on violence to enforce its ideology and goals. Its criminal activities involve the possession, use and distribution of drugs and firearms, both of which Congress expressly identified in the Section 3142(g) as supporting detention. Moreover, the evidence shows that Rivera was not a passive participant in the Latin Kings. Rivera helped establish the Devon Street Latin Kings Chapter and served as Inca of the Fitchburg Chapter. He is captured during a Latin Kings meeting, when he did not know his words were being recorded, reporting the status of the Fitchburg Chapter, including the suspicion that a Latin King had inculpated gang members to law enforcement, and that members had been arrested. Finally, a recording shows that Rivera sold firearms – allegedly .40 caliber handguns and magazines -- to a Latin King associate, and bought and sold narcotics.

The second factor, the strength of the evidence, also supports detention. According to the Government, Rivera's own recorded words will be used to establish his participation in the racketeering conspiracy. Other evidence such as video recordings will prove Rivera's membership and leadership in the Latin Kings. The Government expects to prove that the armed home invasion in February 2019 which resulted in the shooting death of an accomplice was a Latin King racketeering act. A video proves Rivera's presence. The other participants, including the second in command of the Fitchburg Chapter, Will Velez, and the decedent, were

---

[1] The basis for detention on grounds of obstruction of justice appears to be Rivera's membership in the Latin Kings and evidence that other gang members threatened or retaliated against witnesses. See e.g. Ex. 1, ¶10. It is true the Rivera voiced concern at a meeting that a Latin King had cooperated with law enforcement and needed to be terminated. This evidence fails to carry the Government's preponderance of the evidence burden as to Rivera.

4

Latin Kings. Although Rivera's attorney argues that the evidence shows no more than mere presence, in the court's view, it is implausible that Rivera was not actively involved. At the time, Rivera was the Fitchburg Chapter Inca and, as such, at least Velez's superior. Hence, Rivera presumably could have ordered others to commit the crime without him. Further, it is equally implausible that a criminal organization would bring an innocent or unnecessary party to such a planned criminal undertaking. Rather, Rivera's presence indicates Rivera wanted to be a part of the home invasion, even if only to monitor its execution.

The third factor requires consideration of Rivera's history and characteristics. There are positives. Rivera is a citizen and has lived in Massachusetts for 33 of his 36 years. His mother resides in a private home in Randolph; that residence has a furnished basement apartment and it is there Rivera proposes he be released. With assistance from Rivera's sister, who resides in Massachusetts or Rhode Island, Probation has virtually inspected the residence and found it suitable. Rivera has two children who reside with their mother in Fitchburg and he speaks daily with them.[2] Rivera has no passport and has traveled only to Puerto Rico, where he was born. For three years, Rivera worked seasonally as security for Boston Harbor Cruises; he has also worked seasonally at Wilson Farms in Lexington and has a certification for tattoo and body piercings. Rivera's ties to Massachusetts, the proximity of immediate family, and the prospect of a secure and suitable residence in his mother's home persuade the court that there are conditions which will reasonably assure Rivera's appearance as required.

However, Rivera's history raises substantial dangerousness concerns. Rivera reports being a daily user of heroin for over a decade and of prescription opiates for 17 years. During these 17 years, Rivera has been convicted three time for distribution or possession to distribute

---

[2] Rivera has a brother who is a co-defendant. His brother is detained. See PTS Report, p. 1.

narcotics, and once for distributing counterfeit drugs and drug conspiracy. This history, coupled with Rivera's seasonal work history and the recorded conversations, indicate that Rivera supports his drug habit through drug dealing. While Rivera's addiction has been stabilized through MAT, and MAT is available on release through telemedicine, my concern is whether Rivera can maintain sobriety outside an institutional setting. His abstinence through MAT has been achieved only during state or federal custody. Without the institutional structure and forced abstinence of custody, I am concerned Rivera would relapse. If he did, it is almost inevitable that Rivera would resume drug dealing to support his habit. Further, given the pandemic, there is a question whether drug testing will successfully detect a relapse.

Separately, Rivera's history shows a disregard for the law. Rivera was convicted and sentenced for drug dealing, only to resume drug dealing once released until a conviction and sentence again stopped him. He was on pretrial release in February 2019 when he participated in the armed home invasion, in plain violation of the conditions of his state release. In sum, Rivera has shown that he will not abide by the law unless he is incarcerated.

Finally, from the February 2019 armed home invasion, one disturbing feature that reflects on dangerousness emerges. Regardless of how one may describe Rivera's role – merely present or actively participating –the fact is that to escape arrest or danger, Rivera abandoned a mortally wounded person in a parking lot. It may well be that Rivera did not know the extent of the decedent's injury or whether or not he was dead. However, it is clear Rivera did not bother to investigate, but instead put himself first and fled. In my view, regardless of whatever else it may reflect, Rivera's conduct shows profound disregard for another person – this one presumably an associate. In the time of Covid-19, Rivera cannot be trusted to accept, for the good of others and himself, restrictions on his activities.

Lastly, I consider the nature and seriousness of any danger Rivera's release on conditions may pose. To some extent, I have addressed this in the previous paragraph. I add to it Rivera's recorded statements reflecting drug dealing, his sale of .40 caliber handguns to another gang member, his membership and leadership in a gang that relies on violence, guns and drugs, and his criminal history. These show Rivera has little regard for the law, others, or efforts by the courts to deal leniently with him. His release will pose a danger to those with whom he lives, the community, and the police and Probation, already strained by current circumstances, when called upon to deal with Rivera. Probation recommends Rivera's detention. See PSR, p. 10.

I find that the 3142(g) factors establish that no condition or combination of conditions will reasonably assure the safety of the community.

## IV. CONCLUSION

For all the foregoing reasons, I find that no condition or combination of conditions will reasonably assure the safety of any other person or the community. I do find that Rivera's proposed release plan will reasonably assure his appearance as required and reasonably prevent an obstruction of justice. Accordingly, I grant the United States' motion to detain Rivera.

**Marlon Rivera is advised of his right to seek review of this Order.**

/ s / David H. Hennessy
David H. Hennessy
United States Magistrate Judge