UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARLON RIVERA,<br><br>Defendant | Criminal No. 19-CR-10459-RWZ |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION AND RESPONSE TO OBJECTIONS TO PRESENTENCE REPORT**

The government submits the instant memorandum in support of its recommendation of 57 months, excluding departures. As grounds therefore, the government submits that the Defendant's served as the Inca (or leader) of a Chapter of the Latin Kings, and has an extensive criminal record of drug offenses. For this Defendant who served as a leader in an organization that he knew dealt in drugs and violence, a 57 month sentence is a fair and just sentence that accords with the sentencing factors under 18 U.S.C. § 3553(a).

**THE ADVISORY SENTENCING GUIDELINES**

On August 11, 2020, the Defendant pled guilty to Count One of the Indictment, charging Conspiracy to Conduct Enterprise Affairs Through a Pattern of Racketeering Activity, in violation of 18 U.S.C. § 1962(d). The Defendant pled guilty pursuant to a Plea Agreement under Fed. R. Crim. P. 11(c)(1)(C) (D. 1189), where in the government agreed to a specific offense level calculation, and the parties agreed to a sentencing range of 30-57 months of incarceration.

**I.   OFFENSE LEVEL CALCULATION IN PRESENTENCE REPORT**[1]

The government contends that its offense level calculation set forth in the plea agreement

---

[1] References are as follows: entries on the public docket by entry number (D. _); presentence investigation report (PSR) are by paragraph (PSR ¶_) or page (PSR, p. _); trial transcript by volume and page (Tr. _, _); trial exhibits by number (Ex. _); and exhibits to this sentencing memorandum by letter (Exhibit _). The U.S. Probation Department is referred to as "Probation."

1

should control.  See D. 1189.  The government recites that calculation here for completeness and ease of reference:

| | |
|---|---|
| *Base Offense Level*: | 20, under USSG 2D1.1(c)(10), because the Defendant is responsible for 22 grams of cocaine base;. |
| *Role Adjustment:* | +4, because the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, under USSG § 3B1.1(a); |
| *Acceptance of Responsibility:* | -3, because the Defendant has promptly accepted personal responsibility for the offense of conviction, USSG § 3E1.1 |
| <u>Total Offense Level:</u> | <u>21.</u> |
| Criminal History Category: | 11 points (PSR ¶95-96), Category V (PSR ¶97) |
| Guidelines Sentence Range: | 70-87 months. |

The Plea Agreement imposes an upper limit of 57 months on the potential sentence. Additionally, the government has agreed to not oppose a motion for downward departure under USSG § 5K2.23 for the 196 days (approximately six and one-half months), served by the Defendant in the Norfolk House of Correction in relation to Fitchburg District Court, Docket No. 1816CR001706 (the "Fitchburg Case").

To the extent that the offense level calculation of the drug weight, and role adjustment stated in the PSR differs from the Plea Agreement, the government objects.  See PSR ¶¶72-76, 79.

The government and the Defendant agree jointly in the Plea Agreement that the Defendant is responsible for 22 grams of cocaine base.  The government joins in the Defendant's objection and argument concerning the attribution of drug weight, and asks that this Court find the jointly recommended Base Offense Level of 20 based on 22 grams of cocaine base.

The Defendant and the government object to PSR's role adjustment of +3.  See PSR ¶79. The Defendant objects and asserts that no role adjustment should apply.  The government objects and asserts that a +4 role adjustment should apply.

**ARGUMENT**

I.    **APPLICATION OF THE SENTENCING GUIDELINES**

The government bears the burden of proving the facts "supporting an enhancement by a preponderance of the evidence." United States v. Damon, 595 F.3d 395, 399 (1st Cir. 2010).  In finding the facts supporting an enhancement, "[a] sentencing court is entitled to rely on circumstantial evidence and draw plausible inferences therefrom." United States v. Marceau, 554 F.3d 24, 32 (1st Cir. 2009); United States v. Paneto, 661 F.3d 709, 716 (1st Cir. 2011).

A sentencing court "must take pains to base [its] sentencing judgments upon reliable and accurate information." United States v. Tavano, 12 F.3d 301, 305 (1st Cir. 1993). Thus, it may take into account "any information that has sufficient indicia of reliability." United States v. Díaz-Arroyo, 797 F.3d 125, 130 n.3 (1st Cir. 2015). In doing so, it has "wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010).  Here, the Court should adopt the agreed-to drug weight of 22 grams of cocaine base, and apply the +4 role adjustment as set forth in **USSG 3B1.1(a)**

A.    **Drug Weight**

The government joins in the Defendant's objection that the drug weight should be calculated as 22 grams of cocaine base.  The government reiterates the arguments made by the Defendant in his memorandum on this issue.  See D. 1500.

B.    **Aggravating Role Adjustment Under USSG § 3B1.1(a)**

This Court should apply a 4 point adjustment for leadership because the Defendant held a leadership position of the Fitchburg Chapter.  This enhancement requires a district court to make "both a status determination -- a finding that the defendant acted as an organizer or leader of the criminal activity -- and a scope determination -- a finding that the criminal activity met either the numerosity or the extensiveness benchmarks established by the guideline." United States v. Tejada-

3

Beltran, 50 F.3d 105, 111 (1st Cir. 1995); United States v. Arbour, 559 F.3d 50, 53 (1st Cir.2009). In this case, the Court should apply the four-level leadership adjustment because recorded evidence of coconspirators and the Defendant own words prove that he held a leadership role over a Chapter comprised of more than five members.

*Leadership*

As the First Circuit has noted, "'[a] defendant acts as a leader if he or she exercises some degree of dominance or power in a criminal hierarchy and has the authority to ensure that others will follow orders" and that "[a] defendant qualifies as an organizer if he or she 'coordinates others so as to facilitate the commission of criminal activity.'" United States v. Monteiro, 871 F.3d 99, 116 (1st Cir. 2017), quoting United States v. Appolon, 695 F.3d 44, 70 (1st Cir. 2012). "Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG § 3B1.1(a), n.4.

As an initial matter, the Defendant's leadership of the Fitchburg Chapter was acknowledged by another leader, Israel Rodriguez, during an intercepted call on August 31, 2018, with regional officer, Michael Cotto[2]: "I guess Pluto, Pluto's out there got that Inca position now." See PSR ¶46 (the PSR incorrectly identifies the date of this call as August 2019). Furthermore, the Defendant attended a meeting of other Chapter Leaders, and the Massachusetts Leadership in Springfield on October 28, 2018. See PSR ¶50. During this meeting the Defendant reported on the status of the Fitchburg Chapter to Peguero-Colon, the Massachusetts Crown Council Chairman, and Liberto, the

---

[2] See D. 12-1 (identifying Cotto as a former regional officer), and pp. 95-98 (discussing Cuba/Victim 34 termination).

4

Inca of Massachusetts. Additionally, other leaders were present to report on the status of their Chapters, including Marrero, the then-Inca of Springfield, and Israel Rodriguez, the then-Inca of the North Shore. See D. 1500-2.

During this lengthy meeting, the multiple level of leadership discussed the status of the Latin Kings organization in Massachusetts, the whereabouts of various persons who were being sought by the organization for snitching or not reporting, and the recent activity of other members and Chapters. The Defendant was asked specifically about the status the Fitchburg Chapter, and the fallout of the recent termination of the Fitchburg Chapter leader, Cuba. The Cacique (or second-in-command) of Fitchburg, Will Velez, reported that "after we T'd[3] Cuba a lot of us got bagged. A lot of brothers in jail from the Chapter." See PSR ¶51. The Defendant then emphasized the point: "Everybody's locked up from our Chapter. There's a lot of brother's locked up right now. It's hot out there right now There's a lot of crazy ass shit going on out there." PSR ¶51. The gathered leadership then discussed whether the recent arrests of the Fitchburg Chapter were the result of Cuba providing information to police, which is referred to as "telling".

Later during the meeting, Peguero-Colon and the Defendant have a direct exchange where they discuss recruitment of memberships and organization. Peguero-Colon proposed combining the Worcester and Fitchburg Chapter, to which the Defendant replied, "We might have to do that 'cause we only (UI) like 6-7 of us out, you know what im saying?" PSR ¶53. Peguero-Colon proposes this as a temporary measure, "Until the numbers grow" and the Defendant agrees that the merger would be appropriate and acquiesces in the decision.

These recordings demonstrate that the Defendant attended an organizational meeting where the status of the Chapter was reported, and the structure of the Chapter was discussed and decided upon. Invitation, attendance, and participation at such a meeting with his superiors on the State level

---

[3] The phrase "T'd" is shorthand for termination, which is a violent beating.

and other Chapter leaders proves that the Defendant was a leader. And the recording of two other leaders referring to the Defendant's leadership role permits this Court to soundly conclude by a preponderance of the evidence that the Defendant was the Inca and leader of the Fitchburg Chapter. See Damon, 595 F.3d at 399.

*Number of Participants*

The Defendant own words proved that more than six persons were participants in the Fitchburg Chapter that the Defendant organized and led. The Fitchburg Chapter individually, and as a component of the Latin Kings was also "otherwise extensive." USSG § 3B1.1(a). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1 cmt. 2.[4]

As an initial matter, Velez stated during the meeting that Fitchburg "got like 8 brothers in jail." See PSR ¶51. The Defendant agrees that his underlings are incarcerated: "Everybody's locked up from our chapter. There's a lot of brothers locked up right now." See PSR ¶51. Apart from the members in jail, the Defendant reported that there were "six- seven brothers left" not in jail. See PSR ¶51.

The existence of active members is also confirmed by the same August 28, 2018 intercepted call between Michael Cotto and Israel Rodriguez. During that call Israel Rodriguez tells Cotto that they no longer need to deal with Cuba because the Fitchburg Chapter already terminated him: "Aight no doubt, and then also umm I don't know if you already got word that ahh ... Cuba, Cuba, Fitchburg was already handled." See PSR 46. Cotto replied, "Ya, he already handled." The fact of Cuba's termination by the remaining members of the Fitchburg Chapter was also

---

[4] See USSG § 3B1.1(a), cmt. 3 ("In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.").

6

confirmed by Velez during the October 28, 2018 meeting.  Velez stated it specifically, "the brothers- after we T'dCuba a lot of us got bagged." See PSR ¶51.

## II.     THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553

The government requests that the Court impose a sentence of 57 months.  This Defendant served as a leader of a Chapter of the Latin Kings and furthered the enterprise.  This Defendant distributed drugs and did so through the organization, discussing drug distribution and obtaining controlled substances from other members.  All the while, the Defendant knew that this organization was committing and would commit violence.

Though not specifically attributable to this Defendant, it is clear that the Defendant knew and was well-aware of the violence committed by the Latin Kings.  The evidence set forth in the PSR proves that the Defendant obtained his position of leadership based on violence undertaken by the Fitchburg Chapter against the former leader for speaking with police.  This Defendant attended a meeting where violence against this former leader and others for being snitches or rats was openly discussed at length.  See D. 1500-2.  Later in March of 2019, the Defendant attended another meeting where two members were beaten on command of the Latin Kings leaders who were present, for violating the rules of the Latin Kings.

The government acknowledges the Defendant's desire to break from this pattern of repeated incarceration that has resulted from his association with gang life.  However the Defendant's tattoos signify a level of commitment to the gang that this Court should take seriously as it evaluates the Defendant's characteristics.  See PSR ¶122. The Defendant's face bears a tattoo of the Five-pointed Crown, and "Almighty."  His hands carry a crown, the phrases ADR, Love of the King, and his King name "Pluto."  Lastly, on his inner lower lip is the phrase "ADR".

The Defendant also has a significant and lengthy criminal history, whether calculated as the parties anticipated (Category IV), or as calculated by probation (Category V). The number of scored

entries suggests the Defendant's attitude toward the law and his willingness to earn a living through the distribution of controlled substances. The government acknowledges the Defendant's own substance abuse issues, and how this may have negatively affected him. However, this Court should be mindful that the Defendant's conduct here also facilitated the addiction of others and should not discount the harm caused by the Defendant because of this circumstance.

In sum, the nature and circumstances of this defendant's leadership and participation in the racketeering enterprise, as well as his personal history and characteristics, justify a sentence of 57 months. A sentence of this length adequately reflects the seriousness of the offense and also his aggravating role in the organization. This sentence also serves the purposes of promoting respect for the law and providing just—but not excessive—punishment for the harm the defendant caused to the community through his enterprise activities. On consideration of all these factors, 57 months is a fair and just sentence.

## CONCLUSION

Based on the foregoing, the Court should determine that the Defendant's total offense level is 21, and impose a sentence of 57 months.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to

the registered participants as identified on the Notice of Electronic Filing (NEF).

|  |  |
|---|---|
|  | */s/ Philip A. Mallard* |
|  | PHILIP A. MALLARD |
| Date:   November 29, 2020 | Assistant U.S. Attorney |